Carrie I. CUDNEY, and James
C. Cudney, Plaintiffs,

v.

SEARS, ROEBUCK & CO., a New York corporation, Defendant.

No. 99–CV–73044–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 22, 2000.

David J. Elkin, Southfield, MI, for plaintiffs.

Tiffany N. Wilder, Dykema Gossett, Detroit, MI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CLELAND, District Judge.

### I. Background

This premises liability action comes before the court on defendant Sears, Roebuck and Co.'s ("Sears") December 1, 1999 motion for summary judgment. Plaintiff,[1] Ms. Carrie Cudney (joined by her husband, James), responded on December 21, 1999, Sears replied on January 5, 2000, and Ms. Cudney filed a sur-reply on January 26, 2000.[2] A hearing was held on February 2, 2000.

On November 11, 1998, plaintiff entered the Genesse Valley Sears store as a business invitee in Flint, Michigan with her

daughter-in-law, Susan. Plaintiff testified that she tripped and fell over the base of a clothing rack that extended over the carpeted area into the tiled aisle of the store. (Cudney Dep. at 27–28, 31–32, 55). At the time of the fall, Ms. Cudney was not actively shopping, but walking and looking straight ahead, carrying only her purse. (Cudney Dep. at 31, 37). Her daughter-in-law was not walking with her at the time of the fall. Plaintiff testified that she did not see the base of the clothing rack before she tripped over it because she was not looking down, and that even if she had been looking down she would not have been able to see the base because it was covered with either long pants or dresses hanging from the rack that extended down to the floor. (Cudney Dep. at 31, 55). Plaintiff did not testify that she ran directly into the clothes hanging on the rack.[3]

Laverne Smiley, the Women's Sales Manager for Sears at the Genesee Valley Mall, testified that at the time of plaintiff's accident there were about 10% more display racks than normal due to the holiday season, which made the area more crowded. (Smiley Dep. at 25 –26). Ms. Smiley also testified that, in her thirty-six years of employment with Sears, no customers had ever tripped over the base of the racks in her department. Id. at 39. She did testify that she had tripped over the base of the racks when her hands were full of merchandise. (Smiley Dep. at 39).

Ms. Cudney alleges that Sears negligently placed a clothing rack in the aisle of the petite department of the Sears store, thereby failing to safely maintain its prem-

1. As Ms. Cudney is the real party in interest in this suit, the court will simply refer to her as the "plaintiff" for the remainder of this opinion.

2. For future reference, in federal court, the party opposing a motion files a "response" (not an "answer" or "opposition"), which is followed at the movant's discretion, by a "reply" (not a "response"), which may then, by leave of court, be followed by the non-movant's "sur-reply" (not a "sur-response" or "supplemental" something). An "answer" is

a defendant's particularized responses to the allegations made by a plaintiff in his complaint.

3. In her "sur-reply," Ms. Cudney proffered an affidavit intended to "clarify" her deposition testimony. In it, she testified that she "suddenly and without any warning" tripped over the base of a rack, whose base was "partially obscured" by hanging clothing; that she "did not run directly into the clothes hanging from the rack but rather tripped over the base of the rack." See Cudney Aff. at ¶¶ 1, 3, 4.

ises, and that Sears failed to warn plaintiff of that dangerous condition. Mr. Cudney brings a derivative claim for loss of consortium.

## II. Standard

Under Rule 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of some factual dispute does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.

The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of its case upon which the non-moving party would bear the ultimate burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. But the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim. *Id.* at 323, 106 S.Ct. 2548. Once the moving party meets this burden, the burden passes to the non-moving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element necessary to its case with respect to which it bears the burden of proof. *Id.* The non-moving party must show that there is sufficient evidence for a jury to return a verdict in its favor, *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (citation omitted), that is, that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Id.* at 1478 (citation omitted). The non-moving party must present affirmative evidence on critical issues. *Id.* at 1477.

■ Because this case is brought in diversity, the court must apply Michigan's substantive law as interpreted by the Michigan Supreme Court. *See, e.g. Amendola v. R.J. Reynolds Tobacco Co.,* 198 F.3d 244 (Table), 1999 WL 1111515 at *2 (6th Cir. Nov.24, 1999), citing *Reid v. Volkswagen of America, Inc.,* 575 F.2d 1175, 1176 (6th Cir.1978), citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## III. Discussion

■ As a matter of social policy, possessors of land have a legal duty to protect their invitees, with the nature of the duty turning on the relationship between them. *See Bertrand v. Alan Ford, Inc.,* 449 Mich. 606, 608, 537 N.W.2d 185 (1995). This is so because the "invitor is in a better position to control the safety aspects of his property when his invitees entrust their own protection to him while entering his property." *Id.* (internal citation omitted).

■ However, the general rule in Michigan is also that a premises owner has "no duty to warn of open and obvious dangers." *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 100, 485 N.W.2d 676 (1992):

The threshold issue of the duty of care in negligence actions must be decided by the trial court as a matter of law. In other words, the court determines the circumstances that must exist in order for a defendant's duty to arise. Duty may be established ... [by arising generally] by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or

to so govern his actions as not to unreasonably endanger the person or property of others.

Moreover, the "no duty to warn of open and obvious danger" rule is a defensive doctrine that attacks the duty element that a plaintiff must establish in a prima facie negligence case. A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. . . .

However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.

*Id.* at 95–96, 485 N.W.2d 676 (internal citations and quotations omitted).

Quoting Comment "e" of the Restatement of Torts, 2d., § 343A, the court further explained that:

In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

*Id.* at 97 n. 11, 485 N.W.2d 676.

The Michigan Supreme Court further explained its "open and obvious" analysis in *Bertrand v. Alan Ford, Inc.,* 449 Mich.

606, 537 N.W.2d 185 (1995), where it noted the limited circumstances under which a premises owner might still owe a duty even if the danger were open and obvious:

While there may be no obligation to warn of a fully obvious condition, the possessor still may have a duty to protect an invitee against forseeably dangerous conditions . . .

When §§ 343 and 343A [of the Restatement of Torts] are read together, the rule generated is that if the particular activity or condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open and obvious danger will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide.

*Id.* at 610–11, 537 N.W.2d 185.

■■■ Simply put, "overriding public policy" limits the scope of an invitor's duty to exercise reasonable care in protecting his invitees; an invitor is "not the absolute insurer of the safety" of his invitees. *Id.* at 614, 537 N.W.2d 185. For example, a premises owner is under no obligation to protect or warn an invitee of the dangers of falling from ordinary steps, *see id.,* or well-exposed changes in floor levels, *see id.* at 615, 537 N.W.2d 185, or from walking into a concrete post in the entryway of a department store. *See Riddle,* 440 Mich. at 98–100, 485 N.W.2d 676.

■■■ Aside from clothes and hopeful salespersons, there are few things other than clothing racks more likely to be discovered in a clothing store. No reasonable person could enter the clothing department of a modern store without expecting to encounter anywhere from a few to a lot of them. There is, of course, no sugges-

tion to the contrary by plaintiff. Clothing racks, though varying in cosmetic appearance somewhat, all serve identical functions and are ordinarily formed in the same manner: a vertical member from which horizontal members are provided in order to suspend the clothes. Unless the vertical member is stuck in the floor like a Maypole, or the horizontal members are suspended from above, the laws of physics demand that the rack have some kind of base in order to avoid toppling over when loaded with the weight of clothes. The court observes that the vast majority of stores employ common racks with bases.

■ Assuming that plaintiff is correct in her opinion that the rack on which she tripped was located partly on the carpeted section of the floor and partly on the hard tile surface, any danger posed by the presence of the rack so positioned was open, and obvious to behold.[4]

Plaintiff admits that her view was not obstructed in any way, and she said that she was looking straight ahead as she proceeded down the aisle. Thus, one of only two possible situations existed as to the rack: either the base of the rack was obscured from view by clothing (as plaintiff testified) or it was not. If the base was obscured from view by the clothes, then plaintiff could not have come into contact with the base, or any part of the rack, other than by inadvertently walking so close to the rack so that her foot went under the clothes and caught the base. In the alternative, if the base was not obstructed from view, she must have walked into that portion of the rack without seeing it, and thus must have not been paying attention to where the racks were placed

while she was walking down the aisle. In either case, it clear from her testimony that she could have avoided coming into contact with the rack simply by watching where she was walking.

■ Plaintiff counsel's argument that Ms. Cudney was "distracted" by the merchandise that Sears had "intentionally" put there to claim her attention is utterly without merit, even if there were testimony to support it, which there is not. Counsel suggested by demonstration at oral argument that plaintiff was looking left and right, peering this way and that at the distracting merchandise, and for that reason did not see the base of the rack over which she tripped. There are at least two problems with this argument.

First, it flatly contradicts his client's sworn deposition testimony that she was "looking straight ahead" at the time.

Second, a department store is not a sterile environment that provides public invitees a place to be free from visual stimuli; quite to the contrary, proprietors put items on display for the express purpose of drawing customers to them in the hope that the items will be purchased. Members of the public come to department stores precisely because things are on display, wanting to see the actual wares they may purchase. That, of course, is why Ms. Cudney was in the store. Clothing racks and the clothes upon them are part and parcel of that process. The rites of consumerism in no way obviate a consumer's obligation to watch where she is going. Even if Ms. Cudney had been distracted constantly by the clothing on display, her distraction would not have altered Sears' legal duty to her.[5]

---

4. There is no support in the evidence for plaintiff's counsel's statement at oral argument that a person either "would have to be three feet tall" or standing twenty feet away in order to see the base of a clothing rack such as those exemplars depicted in the photographs. The court did not comprehend the meaning of counsel's suggestion at the time it was proffered. Upon reflection in the last few days it has become no more clear.

5. If premises liability were properly founded on plaintiff's "distraction" theory, Michigan's "open and obvious" doctrine is written out of existence for retail stores, and every customer's injury in a store that displays merchandise must go to a jury for resolution: since the customer's attention was distracted by merchandise, she is excused from avoiding hazards that were otherwise openly observable. Q.E.D. It is perhaps possible to imagine a (fanciful) set of facts that *might* impose liability for improperly distracting a custom-

There is no unreasonable risk of harm posed by the existence of racks such as the ones involved here, no matter where they are placed or in what configuration, because a shopper can see exactly where the racks are, and adapt her maneuvering accordingly as she browses amongst them. And it is so routine as to be a matter of judicial notice that department store aisles during the pre-Christmas holiday shopping season have clothing racks, display tables, and other pedestrians often filling the available space.

Here, plaintiff alleges nothing out of the ordinary about the conditions of the rack or the aisle that led to her fall (and which, hypothetically, could lead to a non-obvious condition or one that posed an unreasonable risk of harm capable of surviving summary judgment). Clothes racks in general are not only open and obvious in a department store, they are completely ordinary (unlike, for instance, the "unusual" steps mentioned by the *Bertrand* court and cited by plaintiff). There is nothing unusual alleged about the particular racks shown in the stipulated evidence, and nothing alleged in their design that disguises a latent danger about which only the proprietor knows. There is no suggestion or proof, for example, that some part of the base extends markedly farther out from the upright structure than do the arms from which the clothing is hung, thus making the rack with clothes on it appear to be smaller than it really is at the base, and presenting a tripping hazard by its very presence. The photographs proffered by both parties as examples of the racks utilized at Sears reveal nothing at all out of the ordinary or in the slightest bit unreasonably hazardous. In fact, the only thing that seems out of the ordinary in this case is that plaintiff is the only customer in 36 years that department manager Smiley can recall having tripped over a rack. Although the manager testified that there had been at least one time when she had tripped over the racks herself (and perhaps others), those mishaps occurred only when her arms were full of merchandise, unlike plaintiff who carried only a purse. Moreover, there is no other evidence as to the circumstances under which the manager came into contact with those racks (such as whether she was rushing, or her view was obstructed, she was jostled by someone else, etc).

■ Plaintiff's counsel relies in part on the portion of Ms. Smiley's testimony in which she agreed with counsel's characterization of a rack placed in the main pedestrian aisle as a "hazard." *See* Smiley Dep. at 31–32. This is unavailing. As explained in *Riddle* and *Bertrand,* whether a duty exists and whether a particular condition might pose an unreasonable risk of harm are questions of law to be determined by the court. As previously discussed, it is not as if the aisles were normally clear thoroughfares; Ms. Smiley testified that racks were routinely placed on the tile aisles for display purposes. *Id.* at 29–30. She also testified that the primary reason for keeping racks from being on both the carpet and the tile was orderliness, or "presentation." *Id.* at 30–31.

■ Assuming, *arguendo,* that Ms. Smiley is correct in asserting that it would be less "hazardous" (a term she obviously used in a fairly expansive sense) to have racks only on the carpet, that observation still does not alter Sears' legal duty. As explained in *Riddle* and *Bertrand,* a premises owner is under no obligation to "foolproof" or "insure" the safety of his property; a legal obligation accrues only where a hazardous condition is not open and obvious, or that the risk posed by such a condition is unreasonable. Ordinary cloth-

er's attention; think, for example, of a large, vibrant video display installed in a position that requires customers to look far overhead to see it just as they should be watchful to avoid falling down darkened stairs. No such extraordinary facts are present here, however; this analysis does not apply to the commonplace clothing display "distractions" involved.

ing racks such as these, in department stores such as this, meet neither criteria.

## IV. Conclusion

 There is no legal duty upon premises owners to "prevent careless persons [6] from hurting themselves." *Bertrand,* 449 Mich. at 615 and n. 5, 537 N.W.2d 185 (internal citations and quotations omitted).

Discussing the dangers posed by "ordinary steps," the court concluded:

> [B]ecause steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety. Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps foolproof. Therefore, the risk of harm is not unreasonable.

*Id.* at 616–17, 537 N.W.2d 185.

As it is with steps in buildings, so it is with clothing racks in clothing stores. To paraphrase *Bertrand:* "because clothing racks are the type of everyday occurrence that people encounter, under most circumstances a reasonably prudent person will look where he is going, will observe the rack, and will take appropriate care for his own safety.... There is no duty on the possessor of land to make an ordinary clothing rack foolproof."

The fact that an accident occurred and injuries were suffered, sad though that is, does not mean that the premises owner owed a duty to the plaintiff. In some cases it indicates only that the injured party did not sufficiently attend to her own duty of prudence and watchfulness; in such cases the injured party must bear her own costs. Accordingly,

IT IS ORDERED that defendant's "Motion for Summary Judgment" is GRANTED.

---

**6.** The court is not implying that plaintiff is a "careless person." Accidents are a part of life, and happen to both careful and careless people. That does not, however, mean that they are someone else's fault.