Carrie I. CUDNEY; James C. Cudney, Plaintiffs–Appellants,

v.

SEARS, ROEBUCK AND COMPANY, Defendant–Appellee.

No. 00–1305.

United States Court of Appeals, Sixth Circuit.

Oct. 26, 2001.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Plaintiff Carrie Cudney ("Cudney")[1] appeals from the order of the district court granting summary judgment to Defendant Sears, Roebuck & Co. ("Sears") in this premises liability action premised upon diversity jurisdiction. We AFFIRM.

## I.

On November 11, 1998, Cudney entered the Genessee Valley Sears store in Flint, Michigan, as a business invitee. She was shopping with her daughter-in-law. While walking down an aisle, Cudney tripped over a support leg of a clothing rack. The clothing rack was placed on the carpeted area of the Women's Department, and extended out into the tiled aisle. Laverne Smiley, a former manager at the Sears store, testified that there were more display racks than usual because it was the holiday season.

Cudney stated that she was not actively shopping at the time, but walking and looking straight ahead, and carrying only her purse. (J.A. 62, 64.) Cudney testified that she did not see the base of the rack because it was covered with either "long dresses or long slacks." (J.A. 62.) Cud-

---

1. Carrie's husband, James Cudney, brought a loss of consortium claim that is derivative of the claims brought by Carrie Cudney. His claims are incorporated by reference.

ney stated that she tripped on the tile, but fell onto the carpet, hitting her whole right side on a pillar. (J.A. 62–63.)

Smiley testified that at most, she would put a clothing rack or two in the aisle. (J.A. 174.) She acknowledged that customer safety was always a concern, but that the main reason for not putting more racks into the aisle "was more of presentation. It's not going to look right." (J.A. 174–75.) Smiley testified that in her thirty-six years of employment with Sears, she was not aware of any customer tripping over the support legs of the racks in her department. (J.A. 177.) However, she also testified that she personally had tripped over the support leg of a clothing rack once before when she had been walking with her arms full of merchandise. (J.A. 177.)[2]

Cudney sued Sears in state court, alleging that Sears negligently placed the clothing rack in the aisleway of the store and thus failed to maintain its premises in a safe manner, and that Sears failed to warn Cudney of the alleged defective condition. (J.A. 10–11.) Sears removed the suit to federal court and moved for summary judgment. The district court concluded that Cudney was careless and that Sears did not have a duty to prevent careless persons from hurting themselves. The court ruled that "[c]lothing racks and the clothes upon them are part and parcel" of the shopping process, (J.A. 21–22), and that "the rites of consumerism in no way obviate a consumer's obligation to watch where she is going." (J.A. 22.) Furthermore, "[e]ven if Ms. Cudney had been distracted constantly by the clothing on display, her distraction would not have altered Sears' legal duty to her." (J.A. 22.) The district court granted summary judgment in Sears's favor.

Cudney presents four issues on appeal. First, she argues that the "open and obvious" doctrine does not apply. Second, she claims that even if it did, the support leg of the rack was neither. Third, Cudney asserts that even if the support leg was open and obvious, it posed an unreasonable risk of harm. Fourth, she contends that the Tort Reform Act abolished the "open and obvious" doctrine.

## II.

We review a district court's grant of summary judgment *de novo*. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

Because we are sitting in diversity, Michigan substantive law applies. *See, e.g., Reid v. Volkswagen of America, Inc.*, 575 F.2d 1175, 1176 (6th Cir.1978) (per curiam) (citing *Erie R.R. v. Tompkins*, 304

---

**2.** Defendant claims in its response brief that Smiley stated "that she had tripped once before *because* her arms were full of merchandise and she could not see where she was walking." (Response Br. at 3–4 n. 3; emphasis in original). This is not exactly what she said. Rather, Smiley testified as follows:

Q. Do you know of any occasions where anybody ever tripped over the base of the rack?

A. Sure. Our associates—I've tripped over a base.
Q. You have?
A. Yes.
Q. And you knew those racks were there?
A. Yes. If my hands were full of merchandise and going through, yes, I've hit them. (J.A. 177.)

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

### A.

 A premises owner is required to maintain its property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury. *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 485 N.W.2d 676, 679–81 (1992). On the other hand, a premises owner has no duty to protect invitees from open and obvious dangers. *Id.* at 680. However, even if a danger is open and obvious, a premises owner may still owe a duty to protect an invitee if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee. *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 537 N.W.2d 185, 187 (1995). In this latter situation, the owner "is required to undertake reasonable precautions." *Id.*

 In Michigan, the threshold inquiry in establishing a premises liability action is whether the premises owner owes the plaintiff a duty, which is a question of law for the trial court. *Riddle*, 485 N.W.2d at 681.

 Cudney asserts that the open and obvious doctrine applies only to cases involving a duty to warn, and not to general negligence or duty to protect claims, citing *Walker v. City of Flint*, 213 Mich.App. 18, 539 N.W.2d 535 (1995). *Walker* does not support Cudney's argument. *Walker* dealt with a municipality's statutory duty to maintain a safe highway, and not a common-law duty to warn, and is therefore distinguishable. *See id.* at 537. As the Michigan Court of Appeals subsequently explained in *Haas v. City of Ionia*, 214 Mich.App. 361, 543 N.W.2d 21 (1996), "[i]n an ordinary premises liability situation, the landowner has no duty to make repairs,

but merely a duty to protect invitees and licensees from unreasonable dangers of which they may be unaware; the 'open and obvious danger' principle establishes awareness and thus ability to avoid danger." *Id.* at 22. However, in cases where a statutory duty exists, application of the open and obvious doctrine would undermine the statutory duty. *See id.* (stating that "[i]f the open and obvious danger rule applied, then any governmental agency with the duty to maintain a highway could simply post a sign announcing 'Defective Highway Ahead—Travel at Your Own Risk' and avoid the statutory obligation ... [thus] allowing the open and obvious danger rule to swallow the statutory duty").

 Moreover, in *Millikin v. Walton Manor Mobile Home Park Inc.*, 234 Mich. App. 490, 595 N.W.2d 152 (1999), the Michigan Court of Appeals rejected a similar argument, ruling that, based on Michigan jurisprudence, "the open and obvious doctrine applies both to claims that a defendant failed to warn about a dangerous condition and to claims that the defendant breached a duty in allowing the dangerous condition to exist in the first place." *Id.* at 155. Cudney's argument is without merit.

 Cudney further argues that the common law rule in Michigan is that the open and obvious danger rule does not apply where a retail merchant creates display racks in a self-service store that extend into aisles to create a tripping hazard. She cites *Jaworski v. Great Scott Supermarkets, Inc.*, 403 Mich. 689, 272 N.W.2d 518 (1972). In *Jaworski*, the plaintiff slipped and fell in a supermarket. The plaintiff claimed that as she walked past a hand truck, she reached for a carton of milk and slipped on some cottage cheese. The plaintiff's view had been blocked by the hand cart. In holding that the defendant supermarket was not entitled to an

instruction on comparative negligence, the Michigan Supreme Court held that "[w]hile ordinary prudence generally requires one to see that which is to be seen, contributory negligence depends upon the circumstances.... We cannot accept the notion that a customer in a modern supermarket or department store should be under an obligation to see every defect or danger in his pathway." 403 Mich. at 699, 272 N.W.2d 518.

Contrary to Cudney's assertion, *Jaworski* does not create a heightened duty simply because she was a customer in a store. *See Charleston v. Meijer, Inc.*, 124 Mich. App. 416, 335 N.W.2d 55 (1983) (stating that "[w]e see no valid reason to extend *Jaworski* and create a special standard of care for supermarket patrons"). The holding in *Jaworksi* was based on the facts of the case. *See Jaworski*, 272 N.W.2d at 520 ("Based on the state of facts in the instant case, we do not believe that reasonable minds would differ in concluding that Mrs. Jaworksi was not contributorily negligent failing to use reasonable care for her own safety."). *Jaworski* is factually distinguishable. There, the plaintiff, while reaching for milk, fell on some cottage cheese on the floor that had been recently dropped by another customer. The cottage cheese was small, and hard to see because it was nearly the same color as the floor. The Michigan Supreme Court held it was unreasonable for the customer to be expected to have noticed it on the floor, especially since she fell "as her attention was naturally directed toward the milk display counter." *Id.*

### B.

■ Next, Cudney argues that even if the "open and obvious" doctrine applies, a reasonable person upon casual inspection would not have seen the leg of the display rack at shoe level as she walked down the aisle. In other words, Cudney is claiming that the danger was not open and obvious. She therefore claims that genuine issues of material fact exist regarding Sears's negligence.

The district court did not err in concluding that Sears did not owe a duty to either protect or warn Cudney because clothes racks in department stores are standard, and an average customer could have discovered the existence of the rack upon casual inspection. As the district court noted, "[a]side from clothes and hopeful salespersons, there are few things other than clothes racks more likely to be discovered in a clothing store." (J.A. 19.) As the lower court stated: "No reasonable person could enter the clothing department of a modern store without expecting to encounter anywhere from a few to a lot of them." (J.A. 19.) Further, Sears offered the deposition testimony of former Sears manager Smiley, who stated that during her thirty-six year tenure, she had never heard of a customer tripping over a clothing rack. Significantly, Cudney does not contend that she was forced to walk that closely to the rack because the aisle was otherwise obstructed. In short, Cudney has not alleged facts to create a genuine issue that Sears owed a duty to her.

### C.

■ Cudney also contends that Sears created an unreasonable risk of harm by allowing the leg of its display rack to protrude into the aisle, creating a tripping hazard. However, as the district court held:

There is no unreasonable risk of harm posed by the existence of racks such as the ones involved here, no matter where they are placed or in what configuration, because a shopper can see exactly where the racks are, and adapt her manuevering accordingly as she browses amongst

them. And it is so routine as to be a matter of judicial notice that department store aisles during the pre-Christmas holiday shopping season have clothing racks, display tables, and other pedestrians often filling the available space.

Here, plaintiff alleges nothing out of ordinary about the conditions of the rack or the aisle that led to her fall (and which, hypothetically, could lead to a non-obvious condition or one that posed an unreasonable risk of harm capable of surviving summary judgment). Clothes racks in general are not only open and obvious in a department store, they are completely ordinary (unlike, for instance, the "unusual" steps mentioned by the *Bertrand* court and cited by plaintiff). There is nothing unusual alleged about the particular racks shown in the stipulated evidence, and nothing alleged in their design that disguises a latent danger about which only the proprietor knows.

(J.A. 22–23.) As the district court also observed, Cudney did not allege or offer proof that the clothes rack had an unusual design that caused a tripping hazard. Thus, the risk of harm was not unreasonable. *Cf. Lugo v. Ameritech, Inc.,* 464 Mich. 512, 629 N.W.2d 384, 389 (2001) (holding that potholes are an "everyday occurrence" that ordinarily would be seen by a reasonably cautious person, and the plaintiff failed to allege any special aspects that made the open and obvious pothole an unreasonable risk).

Cudney attempts to rely on the distraction exception as creating an unreasonable risk of harm. In *Bertrand,* the Michigan Supreme Court explained that " 'Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious[.]' " *Bertrand,* 537 N.W.2d at 187 (quoting 2 Restatment Torts, 2d § 343A, comment f, p. 220)); *see also Jaworski, supra.* Cudney's own testimony defeats any reliance on the distraction exception. Cudney testified that she was not actively shopping, but looking straight ahead. Therefore, this argument fails. *Cf. Sears & Roebuck, Inc. v. Chandler,* 152 Ga.App. 427, 263 S.E.2d 171 (1979) (plaintiffs were actively shopping and therefore distracted by the merchandise when the accident occurred).[3]

Thus, as in *Bertrand,* "the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps 'foolproof.' " *Bertrand,* 537 N.W.2d at 189.

### D.

Cudney also raises a new argument on appeal. She claims that the Tort Reform Act of 1995 abolished the open and obvious danger doctrine. We need not consider an argument raised for the first time on appeal. *GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 817 (6th Cir. 1999). In any event, we note that the

---

**3.** In *Lugo, supra,* the Michigan Supreme Court emphasized that in deciding an issue regarding the open and obvious doctrine "the question is whether the *condition of the premises* at issue was open and obvious and, if so, whether there were special aspects of the situation that nevertheless made it unreasonably dangerous." *Lugo,* 629 N.W.2d at 390. Thus, for purposes of summary judgment, the fact that the plaintiff was also negligent would not bar a cause of action, but merely relate to the plaintiff's comparative negligence.

In this case, Cudney's testimony is relevant to the issue of the distraction exception, not her comparative negligence. Therefore, it provides a permissible basis for summary judgment.

Michigan courts have continued to apply the doctrine, *see, e.g., Millikin, supra,* and we assume that the Michigan Legislature was aware of the doctrine when it promulgated the Tort Reform Act. *See Dick v. Dick,* 210 Mich.App. 576, 534 N.W.2d 185, 190 (per curiam) (Mich.Ct.App.1995) (recognizing obligation to read the language of the statute in light of previously established common law).

### III.

For all the foregoing reasons, the judgment of the district court is AFFIRMED.