72 P.3d 1097 (2003)
Paula SURIANO, a single person, Appellant,
v.
SEARS, ROEBUCK & CO., a New York corporation, Respondent.
No. 21263-7-III.
Court of Appeals of Washington, Division 3, Panel Eight.
July 17, 2003.
*1098 Michael J. Riccelli, Spokane, for appellant.
Robert F. Sestero, Spokane, for respondent.
BROWN, C.J.
Paula Suriano fell in a Sears store. Alleging the base of an advertising sign located in the center of a main aisle caused her fall and injury, Ms. Suriano filed a personal injury action against Sears, Roebuck & Co. (Sears). The jury decided for Sears. On appeal, Ms. Suriano contends the trial court committed reversible error in giving a "known or obvious" danger jury instruction. We affirm.

FACTS
Ms. Suriano fell and suffered an injury in a main aisle of the Sears store at Northtown Mall in Spokane. Ms. Suriano filed a complaint for damages against Sears contending it was negligent in placing an advertising sign, the base of which she tripped over, in the center of the aisle.
At a jury trial, Gary D. Sloan, Ph.D., a forensic human factors specialist, testified the sign was about seven feet four inches tall and about two feet wide, with the base projecting about a foot into the hallway to the front and rear of the sign. The sign was situated in the center of an aisle that was about nine feet wide.
It was Dr. Sloan's opinion that the base of the sign was not conspicuous enough because it fell out of a person's central field of vision as one approached it. He testified the base of the sign should have been painted "safety yellow," rather than a metallic color, to make it more conspicuous. Report of Proceedings (RP) at 22. It was also Dr. Sloan's opinion that having the base of a sign project into the path of travel when the sign is designed to attract attention is "an unsafe practice." RP at 22.
Sears employee Randy Ramsey testified he was a Sears "asset protection" associate and manager for a period of time. RP at 50. Mr. Ramsey said Sears started using the type of sign in question in 1995. Although Mr. Ramsey did not consider the sign a risk, *1099 he conceded a person could catch an outside toe on the base of the sign if he or she passed close by the vertical frame of the sign. He testified Sears used 24 of the signs in its Northtown store at the time of the accident.
Mr. Ramsey testified the Northtown store averaged 50,000 transactions per month in 1999. A transaction is an interaction at the cash register. The 24 signs remained in the same relative positions since 1995. Starting in October 2000, the signs were diverted to storage or other uses as overhead signs took over their original function. Mr. Ramsey said he examined 300 accident reports arising from accidents at the Northtown store between 1990 and 1999. Two accidents involved the signs; the first in 1995 where a woman scraped her toe on the base of the sign, and the second being Ms. Suriano's accident. The first accident victim did not require medical attention; the concerned woman reported she had not been "paying attention to what she was doing." RP at 90.
Mr. Ramsey also testified that he visited five or six stores of other major retailers in the Spokane area and found they use similar signs. None of the signs had yellow bases. Mr. Ramsey said the sign involved in Ms. Suriano's fall was not located near racks where customers would examine merchandise. He conceded people had to walk around the sign as they moved through the aisle. Mr. Ramsey estimated 600,000 people per year conducted transactions in the Northtown store.
Laurel M. Really witnessed Ms. Suriano's accident. "As I was walking towards the sign, another lady was walking towards me on the same side of the sign. And she appeared to be walking in an unsteady manner. And as she passed the sign and crossed in front of the sign, she fell." RP at 111. "I don't know if she tripped on the on the leg of the sign, or whether she just fell." RP at 111.
Asked to elaborate on Ms. Suriano's manner of walking, Ms. Really testified, "My recollection would be that she was walking, looked like she might be falling, which, I didn'tI didn't record being a limp, or anything, she just walked unsteadily." RP at 112. Asked if it would have been easy for two people to pass by the sign, Ms. Really testified, "Easily, you could have passed. There's lots of room and there wasn't anybody else around." RP at 112-13. In cross-examination, Ms. Really was asked if Ms. Suriano "cleared the structure" before she veered and fell. RP at 125. Ms. Really answered, "Yes." RP at 125. Ms. Really also testified Ms. Suriano told her she had just gotten out of the hospital.
Ms. Suriano testified she started to experience falling accidents from 1990 and was diagnosed with "post polio syndrome." RP at 143. She admitted seeing the entire sign from a distance of about 20 feet as she approached it. She also admitted having an unobstructed view of the sign's base. She testified she veered toward the sign because something on the other side of the aisle drew her attention.
Ms. Suriano admitted previously stating that she initially thought she tripped over her own feet. But she added, "I don't know why I said that. I didn't really think that." RP at 153. Ms. Suriano admitted wearing a cervical collar at the time of her fall. She admitted her medical condition affected her balance at the time of the accident.
With respect to color of the sign's base, Ms. Suriano said she did not know if it would have made a difference had the base been colored yellow. She admitted recognizing the sign and its base as an obstacle to be avoided. When defense counsel asked Ms. Suriano, "You just didn't avoid it; is that correct?" RP at 163. She replied, "That's correct." RP at 163.
Ms. Suriano proposed the following jury instruction, a variation of Washington Pattern Instruction (WPI) 120.07 derived from Wiltse v. Albertson's, Inc., 116 Wash.2d 452, 805 P.2d 793 (1991):
If you determine that the sign at issue presented an unreasonably dangerous condition or an unreasonable risk of harm to Sears's customers and that Sears failed to exercise reasonable care to protect its customers against the danger, then Sears is *1100 liable for the physical harm caused to Paula Suriano.
Clerk's Papers (CP) at 10.
Sears objected to the instruction as addressing inapplicable "self-service" situations, and urged the court to adopt the standard version of WPI 120.07. CP at 14-18. Ms. Suriano in turn submitted a supplemental brief objecting to Sears' proposed instruction on "natural" or obvious conditions derived from Tincani v. Inland Empire Zoological Society, 124 Wash.2d 121, 875 P.2d 621 (1994). CP at 20. And she proposed an elements instruction based on her Wiltse instruction.
The trial court rejected both Ms. Suriano's proposed Wiltse instructions and Sears' proposed standard WPI 120.07 instruction. But the trial court adopted Sears' Tincani instruction. The adopted instruction (Instruction 10) states:
The owner of a retail store is not liable to customers for physical harm caused to the customers by an activity or condition in the store whose danger is known or obvious to the customers, unless the owner should anticipate the harm despite such knowledge or obviousness.
CP at 81.
Ms. Suriano excepted to the trial court's refusal to give her proposed instruction. But she did not except to the trial court's adoption of Instruction 10. Later, Ms. Suriano questioned the anticipation of harm language in Instruction 10. But Ms. Suriano dropped the matter after the trial court pointed out that the language came directly from the Restatement (Second) of Torts. The next morning, Ms. Suriano clarified she took issue with the denial of her proposed instruction and the trial court's adoption of Instruction 10. The trial court noted Ms. Suriano had already taken her exceptions to instructions.
The jury returned a verdict in favor of Sears. Ms. Suriano moved for a new trial, alleging Instruction 10 was erroneous. The trial court denied the motion. Ms. Suriano then appealed the denial of her new trial motion and the underlying judgment.

ANALYSIS
The issue is whether the trial court erred in giving Instruction 10. Significantly, Ms. Suriano assigns error to Instruction 10 alone. Nevertheless, the parties discuss the trial court's failure to give competing instructions based on Wiltse v. Albertson's Inc., 116 Wash.2d 452, 805 P.2d 793 (1991) and WPI 120.07. Neither party assigned error to the trial court's rejection of those proposed instructions. Accordingly, these related issues are not before us. In passing we note Ms. Suriano did not waive her exception to Instruction 10 by not immediately objecting because she did notify the trial court of her concerns about the instruction in timely supplemental briefing.
Sufficient jury instructions allow the parties to argue their theories of the case, are not misleading, and, when read as a whole properly inform the jury of the applicable law. Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002); Bodin v. City of Stanwood, 130 Wash.2d 726, 731, 927 P.2d 240 (1996). "Even if an instruction is misleading, it will not be reversed unless prejudice is shown." Keller, 146 Wash.2d at 249, 44 P.3d 845 (citation omitted). "A clear misstatement of the law, however, is presumed to be prejudicial." Keller, 146 Wash.2d at 249-50, 44 P.3d 845 (citing State v. Wanrow, 88 Wash.2d 221, 239, 559 P.2d 548 (1977)).
We review alleged jury instructions de novo. Hue v. Farmboy Spray Co., Inc., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). But if no dispute exists that the instruction correctly states the law, "the court's decision to give the instruction will not be disturbed absent an abuse of discretion." Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wash.App. 412, 430, 40 P.3d 1206 (2002) (citing Cramer v. Dep't of Highways, 73 Wash.App. 516, 520, 870 P.2d 999 (1994)); see also Hue, 127 Wash.2d at 92 n. 23, 896 P.2d 682. "Discretion is abused only when it is exercised in a manifestly unreasonable manner or on untenable grounds." Micro Enhancement Int'l, 110 Wash.App. at 430, 40 P.3d 1206 (citing State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)).
*1101 Ms. Suriano contends Instruction 10 is inapplicable in the retail store context, a question of law. She also contends no evidence supports the instruction. Instruction 10, grounded on Restatement (Second) of Torts § 343A(1) (1965), states:
A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
Washington courts recognize Restatement, supra, § 343(A)(1) as "the appropriate standard for duties to invitees for known or obvious dangers." Tincani, 124 Wash.2d at 139, 875 P.2d 621 (citations omitted). "In limited circumstances, Restatement (Second) of Torts § 343A creates a duty to protect invitees even from known or obvious dangers. This occurs when a possessor `should anticipate the harm despite such knowledge or obviousness.'" Id. (quoting Restatement, supra, § 343A(1)).
Ms. Suriano argues Tincani is inapplicable because it involved natural physical hazards existing on the land. But Restatement, supra, § 343A(1), the rule upon which Tincani relies, is applicable to open and obvious conditions occurring in a variety of settings, including retail establishments and building sites. See, e.g., McCarthy v. Garcia Menendez Enter., Inc., 693 So.2d 75, 76 (Fla.App. 1997) (Cope, J., concurring) (noting question of fact existed as to whether high chair legs protruding into aisle of fast food outlet constituted an open and obvious condition for purposes of Restatement, supra, § 343A(1)); Ward v. K Mart Corp., 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 231-32 (1990) (discussing rule in relation to store's door post with which customer carrying large object collided); Jarr v. Seeco Constr., Co., 35 Wash.App. 324, 325-28, 666 P.2d 392 (1983) (discussing rule in relation to stack of sheetrock that injured prospective customer at home construction site). Thus, we reject Ms. Suriano's attempt to exclude Tincani and Restatement, supra, § 343A(1) from the retail store setting.
In addition to Tincani, Sears relies on out-of-state cases. In one case, the appellate court held the store owner was not liable because the display rack the plaintiff tripped over was an open and obvious hazard. Perry v. Color Tile of New Mexico, 81 N.M. 143, 464 P.2d 562, 563 (N.M.App.1970). Perry is informative, but its persuasiveness is limited by the lack of discussion of Restatement, supra, § 343A(1). Sears urges this court to follow Cudney v. Sears, Roebuck & Co., 84 F.Supp.2d 856 (E.D.Mich.2000), aff'd, 21 Fed. Appx. 424, 2001 WL 1355300 (6th Cir.2001). There, a Sears customer, claiming she was distracted by displays, tripped over the base of a clothing rack that extended into an aisle. Applying Michigan's version of Restatement (Second) Sections 343 and 343A, the Cudney court held "any danger posed by the presence of the rack so positioned was open, and obvious to behold." Id. at 860. The court partly reasoned: "Clothes racks in general are not only open and obvious in a department store, they are completely ordinary." Id.
Cudney is factually and procedurally distinguishable in that it dealt with clothing racks and was also a summary judgment case. See also Chiranky v. Marshalls, Inc., 273 A.D.2d 266, 266, 708 N.Y.S.2d 699 (2000) (affirming summary judgment for defendant in case involving "readily observable" clothing rack). Nevertheless, Cudney is persuasive as to the obviousness of the sign at issue here.
Moreover, numerous cases from other jurisdictions have held various objects or fixtures inside stores to be open and obvious conditions depending on factors such as location and lighting. See, e.g., Wellman v. Wal-Mart Stores, Inc., 192 F.Supp.2d 767, 770 (W.D.Mich.2002) (chain protruding 18 to 24 inches into aisle); Paige v. Wal-Mart Stores, Inc., 638 So.2d 4, 6 (Ala.Civ.App.1994) (orange extension cord protruding onto floor); Smith v. Safeway Stores, Inc., 206 A.2d 264, 264 (D.C.App.1965) (lower rack protruding four to five inches into well lit aisle); Bud's Outlet v. Smith, 781 So.2d 219, 223 (Fla.App.2000) (wheelchair located next to store exit); Pollard v. Hill, 447 S.W.2d 777, 779-80 (Mo.App.1969) (box of antifreeze *1102 located next to door); Safeway Stores, Inc. v. Sanders, 372 P.2d 1021 (Okla.1962) (lawn chair placed alongside aisle); Sloss v. Greenberger, 396 Pa. 353, 152 A.2d 910, 911 (Pa. 1959) (wire basket protruding into aisle); Medallion Stores, Inc. v. Eidt, 405 S.W.2d 417, 421 (Tex.Civ.App.1966) (standard display platform in well lighted area). Again, none of the foregoing authorities is directly on point, but all support the general proposition that a seven foot by two foot display sign set in the center of a well-lit department store aisle is open and obvious for purposes of establishing the store owner's duty.
Ms. Suriano contends no substantial evidence supports Instruction 10. But, substantial evidence indicates the sign and its base were out in the open for all to see. Ms. Suriano saw the sign and its base from a distance of approximately 20 feet. She perceived it to be an obstacle to be avoided and walked toward it. See Connor v. Taylor Rental Ctr., Inc., 278 A.D.2d 270, 270, 718 N.Y.S.2d 605 (2000) (noting plaintiff saw and tried to walk around, but tripped over, "readily observable" forklift parked in marked stall). Then, Ms. Suriano veered and fell as she passed it.
Here, the sign was an open and obvious obstruction in the center of a major aisle of the department store, at least for a person perceiving and approaching it from a distance of 20 feet. See Annot. 40 A.L.R. 5th 154 (1996) (noting that the "relationship between the customer and the obstruction" is considered in determining whether the condition was open and obvious). The potential tripping hazard was obvious as well, as the sign and its base was situated in the middle of a main aisle; a shopper's thoroughfare. The evidence showed at least one person before Ms. Suriano ran afoul of the sign. And the sign fell within the scope of Sears' daily safety inspections.
Substantial evidence supported the instruction. The instruction was an accurate version of Restatement, supra, § 343A(1), not confusing, and allowed Ms. Suriano to argue Sears should have foreseen that an inattentive or disabled customer would careen into it. Accordingly, Ms. Suriano's challenge to Instruction 10 fails.

Rejected Instructions
As noted earlier, Ms. Suriano did not assign error to the trial court's rejection of her proposed instruction based on Wiltse v. Albertson's Inc., 116 Wash.2d 452, 805 P.2d 793 (1991). Nevertheless, a brief discussion is merited.
Ms. Suriano's proposed instruction applies narrowly to circumstances where specific hazards arise or exist because of the nature or the operational methods of the business. Wiltse, 116 Wash.2d at 461, 805 P.2d 793; Pimentel v. Roundup Co., 100 Wash.2d 39, 49, 666 P.2d 888 (1983). For the instruction to apply, "there must be a relation between the hazardous condition and the self-service mode of operation of the business." Carlyle v. Safeway Stores, Inc., 78 Wash.App. 272, 277, 896 P.2d 750 (1995) (citing Ingersoll v. DeBartolo, Inc., 123 Wash.2d 649, 652, 869 P.2d 1014 (1994)). Here, the alleged hazard was an advertising sign located in a main aisle and unconnected with a specific product display, a passive and generic fixture with a barely tenuous relationship to Sears' operational methods. In light of the weak link between Sears' operations and the sign, the trial court did not abuse its discretion in rejecting Ms. Suriano's proposed instruction.
Alternatively, Ms. Suriano insists the trial court was required to give the standard version of WPI 120.07, an instruction based on Restatement, supra, § 343. But she did not make that argument at trial, although Sears unsuccessfully did. Ms. Suriano later raised the WPI 120.07 argument as an alternative basis for her new trial motion. Even so, Ms. Suriano did not assign error either to the denial of the requested WPI 120.07 instruction or the trial court's denial of her new trial motion.
In any event, the WPI drafters, citing Tincani, 124 Wash.2d at 139, 875 P.2d 621, commented that in "cases involving invitees and known or obvious dangers, the jury should be instructed in accordance with both Sections 343 and 343A of the Restatement." 6A Washington Pattern Jury Instructions: Civil, at 26 (4th ed.2002). The Tincani court favorably noted the trial court provided a *1103 Section 343 instruction, and then held it was error for the trial court to fail to also give a proper Section 343A(1) instruction. Tincani, 124 Wash.2d at 138-39, 875 P.2d 621. Section 343 states:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
Restatement, supra, § 343.
In light of Tincani, it is ordinarily the better practice to give both Section 343 and Section 343A(1) instructions. Id. But we have not found any controlling holding that it is an abuse of discretion to give a Section 343A(1) instruction alone without the more general Section 343 instruction when substantial evidence shows the object allegedly causing the fall is an obvious and open condition. In light of the evidence in this case of an open and obvious condition, the trial court had a tenable basis for rejecting Sears' proposed Section 343 instruction as well.
Affirmed.
WE CONCUR: SWEENEY and KURTZ, JJ.